IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MIKE WELLINGTON,                       )
                                       )
     Plaintiff,                       )     Civil No. 09-6063-AA
                                       )          OPINION AND ORDER
  vs.                                  )
                                       )
LANE COUNTY, LANE COUNTY HEALTH        )
AND HUMAN SERVICES, GRETA UTECH        )
(individually and official             )
capacity), ROB ROCKSTROH               )
(individually and official             )
capacity), BILL FLEENOR                )
(individually and official             )
capacity), and TOM HOWARD              )
(individually and official             )
capacity),                             )
                                       )
     Defendants.                      )
                                       )

Thomas K. Doyle
Bennett, Hartman, Morris & Kaplan, LLP
111 S.W. Fifth Avenue, Suite 165
Portland, Oregon 97204-3627
    Attorney for plaintiff

Jens Schmidt
Ben Miller
Harrang Long Gary Rudnick P.C.
360 E. Tenth Avenue, Suite 300
Eugene, OR 97401-3273
    Attorneys for defendants


1    - OPINION AND ORDER

AIKEN, Judge:

Plaintiff brought this action against Lane County and various County employees, asserting violations of state and federal law related to his termination from his position working at the Lane County Health and Human Services animal shelter. Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff does not oppose the following motions to dismiss: (1) plaintiff's claim for free speech retaliation under the Oregon Constitution, (2) plaintiff's claim for retaliation under the Family Medical Leave Act (FMLA),[1] (3) all claims against individual defendants in their official capacities, (4) all claims against Lane County Health and Human Services, and (5) claims against individually named defendants for aiding and abetting discrimination and the substitution of Lane County as the defendant for that claim. Accordingly, defendants' First, Second, Seventh, and Eighth Motions to Dismiss are granted in full, and defendants' Fourth Motion to Dismiss is granted as to plaintiff's Ninth Claim for Relief.

Defendants' remaining motions are discussed below.

## FACTS

Because this matter comes before the court on defendants'

---

[1] The FMLA interference portion of plaintiff's Seventh Claim for Relief remains.

2   - OPINION AND ORDER

motion to dismiss, I will state the facts as alleged by the plaintiff.

Plaintiff Mike Wellington was an employee of Lane County ("County"). As a result of his position at the animal shelter, plaintiff was at the center of the controversy surrounding the transition to a "no-kill" shelter. Plaintiff opposed and publicly spoke out against the timeline for this transition, arguing that the changes would actually result in harmful conditions for the animals due to overcrowding and ineffective disease control. Plaintiff and his staff were the targets of repeated harassment at the hands of animal activists. Plaintiff reported this harassment to his supervisor, Director of Health and Human Services Rob Rockstroh ("Rockstroh"), but Rockstroh never took any action in response to plaintiff's complaints. As a result of these issues, Bill Fleenor ("Fleenor"), a member of the Board of Commissioners for the County, advocated for and sought plaintiff's termination. Prior to December 2007, plaintiff had never been reprimanded or disciplined and had received only positive performance evaluations.

In December 2007, plaintiff requested and was granted a work schedule change in order to accommodate his chemotherapy treatments. In January 2008, plaintiff's doctor recommended plaintiff take a six-week leave of absence. The County

3   - OPINION AND ORDER

approved this leave pursuant to the Oregon and Federal Family Medical Leave Acts.

On March 2, 2008, plaintiff invited Lane County Human Resources Director Greta Utecht ("Utecht") to dinner at his home. During this dinner, Utecht advised plaintiff to take 90 days of leave, persuade his doctor to submit long term, permanent disability papers, and buy out his severance package. Utecht also suggested that if plaintiff's doctor would not submit the disability paperwork, he might seek an opinion from another physician who would. Plaintiff refused, stating that he expected to recover and return to full duty status. He also indicated to Utecht that he believed seeking disability payments when he did not consider himself disabled would be fraud. Utecht advised plaintiff his return to work might be confrontational.

When plaintiff returned to work on March 18, 2008, he was told to report to Rockstroh's office rather than his own office. Rockstroh told plaintiff his office was not ready and placed plaintiff on non-disciplinary administrative leave. Plaintiff was instructed not to go to the animal shelter or to contact shelter staff, without any explanation of these restrictions. Rockstroh told plaintiff, "I really didn't think you would be back."

When plaintiff requested permission to go to the animal

4   - OPINION AND ORDER

shelter to retrieve some personal items, Rockstroh agreed but required Tom Howard ("Howard"), the County employee acting in plaintiff's position in his absence, to accompany plaintiff. Plaintiff felt humiliated, as typically only terminated employees are required to pick up personal belongings with an escort.  When plaintiff arrived at his former office, his belongings were in boxes and it appeared they had been packed up for some time.

   Rockstroh and Utecht offered to compensate plaintiff for the expense of traveling to Portland, Oregon, to be evaluated for a possible career change.  Rockstroh said, "You never know, maybe you're better suited to run the dump."  Plaintiff felt this comment was outrageous and extreme.  Rockstroh also issued statements to the local newspaper regarding plaintiff's leave, without plaintiff's consent.  Plaintiff considered his medical leave to be a private matter, and also believed Rockstroh's statements implied plaintiff had done something wrong and was being disciplined, or had experienced a breakdown of some sort due to job stress.

   Plaintiff requested reinstatement, but his request was denied.  Instead, he was placed in a different and un-equivalent position and his employment was eventually terminated.

**STANDARDS**

5   - OPINION AND ORDER

Under Fed. R. Civ. P. 12(b)(6), once a claim has been stated adequately, it may be supported by "showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiff, and its allegations are taken as true. Ernest W. Hahn, Inc. v. Codding, 615 F.2d 830, 834-35 (9th Cir. 1980). Even a "somewhat vague and conclusory" complaint may be sufficient to withstand a 12(b)(6) motion. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983).

**DISCUSSION**

I. County Liability

Defendants move to dismiss plaintiff's § 1983 claims against the County for First and Fourteenth Amendment violations. Defendants argue that plaintiff has failed to state a claim on which relief can be granted because he has not alleged that the County had a policy or custom of violating constitutional rights. I disagree.

A governmental entity may be liable under § 1983 only if the plaintiff shows: (1) he was deprived of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to a deliberate indifference to his constitutional rights; and (4) the policy is the moving force behind the constitutional violation. Mabe v. San Bernadino County Dep't

6   - OPINION AND ORDER

of Pub. Soc. Servs., 237 F.3d 1101, 1111-12 (9th Cir. 2001). Governmental liability for unconstitutional conduct even reaches informal policies that occur based on practices of state officials that are customary and well-settled. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978).  However, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).  A municipality may also be held liable if the plaintiff can show the constitutional deprivation was due to "a deliberate choice . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).  The determination of who constitutes a final policy-maker for the purposes of § 1983 claims is a matter of state law.  Jackson v. Gates, 975 F.2d 648, 654 (9th Cir. 1992).

    Plaintiff's Monell claim survives if, under Pembaur, the complaint alleges a deliberate choice made by an official responsible for establishing final policy.  Defendant Rockstroh, as Director for Lane County Health and Human

7    - OPINION AND ORDER

Services Department, at least arguably is an official responsible for establishing final policy with regard to placement and firing.  Plaintiff alleges Rockstroh was involved in the chain of events that eventually led to plaintiff's replacement and termination.  At this stage, such allegations are sufficient to state a claim under <u>Pembaur</u> and <u>Monell</u>.  Defendants' motion to dismiss plaintiff's second and tenth claims for relief against the County is denied.

<u>II. Intentional Interference with Economic Relations</u>

  Defendants next move to dismiss plaintiff's intentional interference with economic relations (IIER) claim under a two-step analysis.  First, defendants argue that the plain text of the Oregon Tort Claims Act (OTCA) requires the dismissal of all claims against the individual defendants and the substitution of the County as the sole defendant.  Second, defendants contend that because an IIER claim cannot be maintained by an employee against his employer for interfering with the employment relationship, the IIER claim against the County must be dismissed.  I agree.

  To state a claim for IIER under Oregon law, a plaintiff must allege: "(1) the existence of a professional or business relationship . . . , (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect

8   - OPINION AND ORDER

between the interference and damage to the economic relationship, and (6) damages." McGanty v. Staudenraus, 321 Or. 532, 535, 901 P.2d 841, 844 (1995). The tort serves "as a means of protecting contracting parties against interference in their contracts from <u>outside</u> parties." Id. at 536 (emphasis in original). In a typical IIER claim, the person interfering is a "complete stranger to the contractual relationship." Wampler v. Palmerton, 250 Or. 65, 74, 439 P.2d 601, 606 (1968). In general, then, employees are shielded from liability for interference with economic relations between their employing corporation and other individuals, so long as the employee is "acting within the scope of his employment and for [the] benefit of the corporation." Id. at 75.

Defendants contend, and plaintiff concedes, that, under the OTCA, the "public body" (here, the County) must be substituted for the individually named defendants Rockstroh, Utecht, Fleenor and Howard in plaintiff's IIER claim.[2]

---

[2] The OTCA provides, in pertinent part, that "[t]he sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment . . . shall be an action against the public body only." Or. Rev. Stat. § 30.265(1). Plaintiff does not dispute that the plain language of the statute requires substitution in this case, but rather argues that the effect of this substitution would be an unconstitutional emasculation of the remedy available at common law. However, defendants correctly point out that even without substitution, an IIER claim against individual defendants acting within the scope of their employment duties fails, because such defendants do not satisfy the "third party" element of an IIER claim. See McGanty v. Staudenraus, 321 Or. at 538 ("[W]hen an

9   - OPINION AND ORDER

Defendants argue that once this substitution is made, the IIER claim must necessarily be dismissed due to the absence of the necessary third party. I agree that the plain text of the OTCA requires substitution of Lane County for the individual defendants if those defendants were acting within the scope of their employment duties. There is no indication in either the complaint or plaintiff's response brief that plaintiff alleges defendants Rockstroh, Utecht, Fleenor or Howard acted outside the scope of their employment duties. Therefore, defendants' motion to substitute the County for individual defendants Rockstroh, Utecht, Fleenor and Howard under the OTCA is granted, and the motion to dismiss plaintiff's resultant IIER claim against the County is dismissed for failure to state a claim.

### III. Defendant Fleenor's Legislative Immunity

Finally, defendants move for the dismissal of plaintiff's § 1983 claims against Fleenor alleging absolute legislative immunity. Defendants argue that plaintiff has failed to state facts sufficient to allege that Fleenor's activities were non-legislative. I disagree and find that Fleenor has failed to demonstrate that his acts were legislative, rather than

---

employee is acting in the scope of the employee's employment, the employee is acting as the employer . . . [and] is not a third party for the tort of intentional interference with economic relations.") Therefore, plaintiff's constitutional argument is moot and inappropriate to consider here.
10   - OPINION AND ORDER

administrative.

Local legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities. Bogan v. Scott-Harris, 523 U.S. 44, 55 (1998).  However, "not all governmental acts by . . . a local legislature[] are necessarily legislative in nature." Cinevision Corp. v. City of Burbank, 745 F.2d 560, 580 (9th Cir. 1984).  Absolute immunity attaches only to actions "done in the sphere of legitimate legislative activity." Tenney v. Brandhove, 341 U.S. 367, 376 (1951).  The Ninth Circuit determines whether an action is legislative by considering four factors: "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." Kaahumanu v. County of Maui, 315 F.3d 1215, 1220 (9th Cir. 2003) (quoting Bechard v. Rappold, 287 F.3d 827, 829 (9th Cir. 2002) (internal quotation marks omitted)).  Whether an act is legislative turns on the nature of the act itself, and not on the motive of the official performing it; thus, judicial inquiries into motive are inappropriate in the context of evaluating an assertion of absolute legislative immunity. Bogan, 523 U.S. at 54.  The question is whether the actions of the legislator, when

11   - OPINION AND ORDER

"stripped of all considerations of intent and motive," were legislative rather than administrative or executive. Kaahumanu, 315 F.3d at 1219 (quoting Bogan, 523 U.S. at 55). Because immunity is an affirmative defense, "[t]he burden of proof in establishing absolute immunity is on the individual asserting it." Trevino v. Gates, 23 F.3d 1480, 1482 (9th Cir. 1994).

At this stage, defendant Fleenor has failed to demonstrate that his acts were legislative, rather than administrative, in nature. Defendants rely on a footnote in Chateaubriand v. Gaspard for the proposition that "employment decisions accomplished through traditional legislative functions are protected legislative acts." 97 F.3d 1218, 1221 n.3 (9th Cir. 1996). This footnote, however, merely highlights an exception to the general rule stated in the body of the opinion: that "courts generally consider legislators' employment and personnel decisions to be administrative, rather than legislative, acts." Id. at 1220-21 (citing Eleventh, First, and Fourth Circuit cases where legislators' employment decisions were found to be administrative acts). In fact, the same section concludes with the unambiguous statement that "[t]he decision to demote and to discharge a specific individual is an administrative act. The [legislators are] thus not entitled to absolute immunity for the conduct . . .

12   - OPINION AND ORDER

allege[d]."  Id. (emphasis added).

Plaintiff alleges that Fleenor advocated for and requested the termination of plaintiff, and in so advocating, Fleenor made charges damaging plaintiff's standing in the community and impairing his ability to find employment.  It is unclear from the pleadings whether Fleenor's alleged actions were legislative or administrative in nature.  For this reason, dismissal of the claim is inappropriate at this stage. Defendants' motion to dismiss claims against Fleenor based on absolute legislative immunity is denied.

## CONCLUSION

Defendants' motion to dismiss (doc. 20) is granted in part and denied in part, as outlined below.  Defendants' supplemental motion to dismiss (doc. 25) is granted. Defendants' request for oral argument is denied as unnecessary.

Defendants' motion to dismiss plaintiff's claims for: free speech retaliation under the Oregon Constitution (First Motion to Dismiss) and retaliation under the Family Medical Leave Act (Seventh Motion to Dismiss) are granted.  Defendants' motions to dismiss all claims against individual defendants in their official capacities (Second Motion to Dismiss) and all claims against Lane County Health and Human Services (Eighth Motion to Dismiss) are granted.  Defendants' motion to dismiss plaintiff's claims for intentional interference with economic

13   - OPINION AND ORDER

relations and for aiding and abetting discrimination against the individual named defendants, and to substitute the County as the defendant in said claims (Fourth Motion to Dismiss), is granted. Defendants' motion to dismiss plaintiff's claim for intentional interference with economic relations (Fifth Motion to Dismiss) is granted.

Defendants' motions to dismiss plaintiff's § 1983 claims against the County (Third Motion to Dismiss) and Fleenor (Sixth Motion to Dismiss) are denied.

IT IS SO ORDERED.

Dated this  24  day of July 2009.


                                             /s/ Ann Aiken
                                                     Ann Aiken
                                     United States District Judge