FILED'10 DEC 10 10:49USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MIKE WELLINGTON,

        Plaintiff,

     v.

LANE COUNTY; GRETA UTECHT
(individual capacity); ROB
ROCKSTROH (individual capacity);
BILL FLEENOR (individual
capacity); and TOM HOWARD
(individual capacity).

        Defendants.

Civ. No. 09-6063-AA
OPINION AND ORDER

---

Thomas K. Doyle
Bennett, Hartman, Morris & Kaplan, LLP
111 S.W. Fifth Ave., Ste. 165
Portland, Oregon 97204-3627
    Attorney for plaintiff

Jens Schmidt
Ben Miller
Harrang Long Gary Rudnick P.C.
360 E. 10th Avenue, Ste. 300
Eugene, Oregon  97401-3273
    Attorneys for defendants

1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Mike Wellington filed suit against defendants Lane County, Greta Utecht, Rob Rockstroh, Bill Fleenor and Tom Howard. Plaintiff alleges violations of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*, and the Oregon Family Leave Act (OFLA), Or. Rev. Stat. § 659A.165; disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112 and Or. Rev. Stat. § 659A.112; retaliation in violation of his First Amendment rights; a violation of 42 U.S.C. § 1983 and his right to liberty under the Due Process Clause of the 14th Amendment; and the state common law tort of wrongful discharge. Defendants move for summary judgment on all claims. The motion is granted and this case is dismissed.

## I. Factual Background

The following facts are not in dispute and are taken from the parties' submitted briefings.

Plaintiff, Mike Wellington, worked for defendant Lane County ("County") as the program manager for Lane County Animal Regulation Authority in 2000 until his termination in 2008.

Plaintiff's office was located at the animal shelter in West Eugene. His responsibilities included managing the county animal shelter and supervising several people.

In May 2007, the Lane County Board of Commissioners created the Save Adoptable Animals task force. The task force was created

2 - OPINION AND ORDER

in an effort to identify programs and practices that could achieve the goal of significantly decreasing the number of adoptable animals that were euthanized.

Also in May 2007, the Board of Commissioners moved LCARA to the Department of Health and Human Services (HHS).   LCARA was later renamed Lane County Animal Services (LCAS).

After this move, defendant Rob Rockstroh ("Rockstroh") became plaintiff's immediate supervisor.  Rockstroh has been the Director of HHS for the County since 1987.

During this time period, some Lane County citizens had criticized the LCAS management.  The citizens felt the animal shelter was mismanaged and too many animals were euthanized.

On September 19, 2007, the Save Adoptable Animals Task Force issued its cumulative report, recommending that the animal shelter adopt changes which would ensure more animals were adopted instead of euthanized.

Plaintiff spoke out publicly against the County's move towards implementing a no-kill plan at LCAS.  He spoke at county meetings, and also voiced concerns to Rockstroh about threats and harassment directed towards plaintiff and other shelter staff by animal rights activists.

On September 21, 2007, defendant Bill Fleenor ("Fleenor"), a elected member of the Board of Lane County Commissioners, sent an email to Rockstroh opining that Rockstroh should seriously consider replacing plaintiff as the manager of LCAS because of his "lack of cooperation and willingness to embrace positive change."

3 - OPINION AND ORDER

Wellington Depo., Ex. 6.

On October 3, 2007, the Board of Commissioners ordered that County staff prepare a plan for implementing the recommendations of the Save the Adoptable Animals Task Force.

In December 2007, plaintiff requested an adjustment to his work schedule so that he could receive medical treatment for an illness. His request was approved by Rockstroh and the Assistant Director of HHS, Karen Gaffney.

In January 2008, plaintiff requested medical leave in order to undergo chemotherapy treatment for treatment of Hepatitis C, from which plaintiff suffers. The leave was approved by Lane County as FMLA and OFLA leave.

Defendant Tom Howard ("Howard") became Acting Manager of LCAS during plaintiff's leave. Howard was hired as a supervisor in LCARA in December 2006 and he reported directly to the plaintiff prior to the plaintiff's departure for leave.

During plaintiff's leave, Rockstroh was quoted in the local paper, the Eugene Register-Guard, confirming that plaintiff was on medical leave.

Also, while plaintiff was on leave, the County commissioned a survey of shelter employees. The survey results reflected that some shelter employees were unhappy with plaintiff's management of the shelter.

On March 2, 2008, plaintiff invited Greta Utecht ("Utecht"), the Lane County Human Resources director, to his home for dinner. During this dinner, Utecht advised plaintiff to take 90 days of

4 - OPINION AND ORDER

leave, persuade his doctor to submit long term, permanent disability papers, and buy out his severance package. Utecht also suggested that if plaintiff's doctor would not submit the disability paperwork, he might seek an opinion from another physician who would. Plaintiff refused, stating that he expected to recover and return to full duty status. He also indicated to Utecht that he believed seeking disability payments when he did not consider himself disabled would be fraud. Utecht advised plaintiff his return to work might be confrontational.

When plaintiff returned to work on March 18, 2008, he was told to report to Rockstroh's office rather than his own office. Rockstroh told plaintiff his office was not ready and placed plaintiff on non-disciplinary administrative leave. Plaintiff was instructed not to go to the animal shelter or to contact shelter staff, without any explanation of these restrictions.

Plaintiff asked Rockstroh if he was in any kind of trouble, to which Rockstroh stated, "no, not at all." Wellington Depo., Ex. 7, p. 123. Rockstroh called Tom Howard and asked him to meet plaintiff at the shelter so plaintiff could retrieve his things.

Plaintiff returned to work a week later, but denies that he returned to the same position as shelter manager. Rockstroh had instructed plaintiff to go to an office building in downtown Eugene, rather than his office at the shelter. Additionally, plaintiff felt his job responsibilities were vastly modified; for example, Rockstroh informed plaintiff that he would no longer be directly supervising any of the animal shelter staff.

5 - OPINION AND ORDER

During this same time period, Lane County was undergoing a budget review process. The Board of County Commissioners voted on a budget which eliminated two positions, including plaintiff's managerial position.

Plaintiff was terminated in May 2008. In his termination letter, the County states that plaintiff's position was eliminated because of budget cuts. Wellington Depo., Ex. 7.

On September 12, 2008, plaintiff filed a complaint with the Bureau of Labor and Industries("BOLI"). Plaintiff received a right to sue letter from BOLI.

## II. Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond

6 - OPINION AND ORDER

the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

The court must resolve all reasonable doubts as to the existence of genuine issues of material fact against the moving party and construe all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630. However, the Ninth Circuit has refused to find a genuine issue of fact where the only evidence presented is "uncorroborated and self-serving" testimony. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).

### III. Discussion

Plaintiff alleges multiple federal and state claims against defendants. First, plaintiff maintains that defendant Lane County wrongfully discharged and discriminated against him under the ADA, FMLA, and their state law counterparts. Plaintiff also alleges that Utecht, Rockstroh, Fleenor, and Howard aided and abetted the County in depriving him of his rights under the ADA, FMLA and state laws. Plaintiff alleges that defendants retaliated against him for exercising his right to free speech when he spoke out publicly against proposed changes for the LCAS and the threats he had received. Finally, plaintiff alleges the County, Fleenor, and Rockstroh violated his liberty interest under the Due Process Clause of the 14th Amendment in violation of 42 U.S.C. § 1983 by damaging his reputation.

Defendants move for summary judgment on all claims, arguing plaintiff has failed to raise any genuine issues of material fact.

7 - OPINION AND ORDER

## A. First Amendment Retaliation Against All Defendants

Plaintiff alleges that the County, Utecht, Rockstroh, Fleenor, and Howard retaliated against him by terminating his employment because he engaged in speech protected by the First Amendment.

Title 42 U.S.C. § 1983 provides in part that a person may sue the government and government officials for violations of the United States Constitution. Public employees cannot be forced to give up their First Amendment rights when they accept the benefit of public employment. Tucker v. State of California Dep't of Educ., 97 F.3d 1204, 1210 (9th Cir. 1996). To state a claim for First Amendment retaliation against a public employer, a public employee plaintiff must show: 1) the employee spoke out on a matter of public concern; 2) the employee spoke in his or her capacity as a private citizen; and 3) the employee's free speech was a substantial or motivating factor in the adverse employment action taken towards the employee. Eng. v. Cooley, 552 F.3d 1062, 1070-71 (9th Cir. 2009). If the employee meets this burden, the public employer must establish that it would have taken the adverse employment action against the employee even in the absence of the employee's protected speech. Id.

Here, plaintiff cites two instances in which he engaged in allegedly protected speech. First, plaintiff maintains that he reported the threats he was receiving to Rockstroh, his immediate supervisor. Next, plaintiff states he spoke at a public County Commissioner's meeting and voiced his concern about the implementation of a proposed plan for the animal shelter.

8 - OPINION AND ORDER

I find that the second requisite element of a free speech retaliation claim - speech as a private citizen - is dispositive. Plaintiff presents no evidence that he was speaking out in his capacity as a private citizen.   There is no dispute that in both instances plaintiff was speaking out pursuant to his duties as a county employee.

In the first instance, plaintiff expressed concern to Rockstroh about the threats he had received; plaintiff did so at work, in Rockstroh's office.  Plaintiff reported the threats in his capacity as a public employee and pursuant to his job description. In the second instance, plaintiff spoke out in his capacity as a public employee;  while County Commissioner meetings are public forums, plaintiff appeared pursuant to his job duties.   "When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006).

Finally, plaintiff's claim is undermined by his deposition testimony, in which he admits he was speaking "on the clock" and pursuant to his job duties in both of these instances. Wellington Depo., Ex. 7, p. 20.  Plaintiff concedes that speaking at County Commissioner meetings was part of his job.  Id.  Thus, no genuine issue of material fact exists as to the capacity in which plaintiff spoke out.  Because I find that plaintiff's speech was uttered as a public employee, not as a private citizen, the court need not

9 - OPINION AND ORDER

decide whether the content of the speech was of a public concern or whether the speech was a substantial or motivating factor in his termination. Defendants are entitled to summary judgment on plaintiff's first claim.

## B.  **Wrongful Discharge**

Plaintiff asserts a common law wrongful discharge claim as against the County only, based on termination for allegedly engaging in protected free speech. The County maintains that plaintiff is precluded from bringing a wrongful discharge claim because plaintiff has an adequate statutory remedy under 42 U.S.C. § 1983. While plaintiff argues that he has alleged facts sufficient to survive summary judgment, his argument misses the point.

The question of whether a terminated employee can bring a wrongful discharge claim is "a gnarly one." Farrington v. Pepsi-Cola Bottling Co. of Bend, 2004 U.S. Dist. WL 817356, *2 (D. Or. 2004). Under Oregon law, the availability of a common law remedy depends upon the absence of an adequate statutory remedy. Huff v. City of Portland, 2006 WL 57212 (D. Or. 2006), Price v. Multnomah County, 132 F. Supp.2d 1290, 1295 n. 6 (D. Or. 2001) (citing Delaney v. Taco Time Int'l, Inc., 297 Or. 10, 16, 681 P.2d 114 (1984)). A wrongful discharge claim is precluded if an existing remedy adequately protects the public interest in question. Draper v. Astoria Sch. Dist. No. 1C, 995 F. Supp. 1122, 1130-31 (D. Or. 1998). Generally, this court recognizes that § 1983 provides adequate statutory remedies and precludes a claim for

10 - OPINION AND ORDER

wrongful discharge when based upon the same allegations.  See, e.g., Draper, 995 F. Supp. 1122; Shultz v. Multnomah County, 2009 U.S. Dist. LEXIS 44958 (D. Or. 2009); Baynton v. Wyatt, 411 F. Supp. 2d 1223 (D. Or. 2006); Minter v. Multnomah County, 2002 U.S. Dist. LEXIS 20378(D. Or. May 10, 2002).  This applies to plaintiffs bringing a claim under section 1983 for First Amendment retaliation.  Baynton, 411 F. Supp. 2d at 1225.

I find that plaintiff's remedy under section 1983 is the same as it would be under a wrongful discharge claim.  Thus, plaintiff is precluded from bringing a common law wrongful discharge claim and summary judgment for the County is granted as to this claim.

### 3.  Disability Discrimination Claims Against The County

Plaintiff brings a claim against the County for unlawful discrimination under the ADA and its Oregon counterpart on the basis of his alleged disabilities.  See 42 U.S.C. § 12112(a), Or. Rev. Stat. § 659A.112; see also Washburn v. Columbia Forest Products Inc., 340 Or. 469, 473, 134 P.3d 161 (2006) (Oregon statute is designed as a mirror image of the Americans with Disabilities Act); Snead v. Metropolitan Porperty & Case. Ins. Co., 237 F.3d 1080, 1087 (9th Cir. 2001) ("The standard for establishing a prima facie case of discrimination under Oregon law is identical to that used in federal law.").

Plaintiff suffers from Hepatitis C and underwent chemotherapy treatment for his illness.  Plaintiff alleged that once the County knew or perceived he was disabled, it discriminated against him because of his impairments and failed to accommodate his

11 - OPINION AND ORDER

disabilities. Specifically, plaintiff claims that the County treated plaintiff in a disparate, discriminating and harassing manner because of his record of disability.    Pl's Second Am. Complaint, p. 10.

The ADA makes it unlawful for an employer to discriminate against a qualified individual with a disability.   42 U.S.C. § 12112(a).   To establish a prima facie case of disability discrimination, plaintiff must show: (1) he is disabled within the meaning of the statute; (2) he is a qualified individual, able to perform the essential functions of his job with or without reasonable accommodations; and (3) he suffered adverse employment action based on his disability.   Nunes v. Wal-Mart Stores, 164 F.3d 1243, 1246 (9th Cir. 1999).

A "disabled" person within the meaning of the statute is one who has, or is regarded as having, a "physical or mental impairment that substantially limits one or more major life activities," such as sleeping, eating, and walking.    42 U.S.C. §§ 12102(1)(A), (2)(A).  The United States Supreme Court has established that there is a "demanding standard for qualifying as disabled." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002). To qualify as disabled, a plaintiff must do more than "merely submit evidence of a medical diagnosis of an impairment."   Id. at 198. The plaintiff must show that the impairment's impact is permanent or long term.   Id.

Plaintiff alleges he is disabled, or regarded as disabled, because of his Hepatitis C.  Drawing all inferences in favor of the

12 - OPINION AND ORDER

nonmoving party, I assume, without finding, that plaintiff is disabled with regard to these health conditions.

At the second step of the inquiry, plaintiff must show he is a "qualified individual." "Qualified" means a disabled individual who can, with or without accommodation, "perform the essential functions" of the job.  42 U.S.C. § 12111(8).  In the absence of evidence to the contrary, I find plaintiff is a qualified individual under the statute.

The last step in the inquiry is whether plaintiff suffered adverse employment actions because of his disabilities.  The ADA prohibits an employer from "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee."  42 U.S.C. § 12112(B)(1).

Plaintiff alleges that the County discriminated against him by reassigning him because of his disability.  The County argues that plaintiff offers no evidence that it or its agents discriminated against him on the basis of his health issues.  I agree.

The County presents evidence showing that defendant Rockstroh, plaintiff's direct supervisor and the person in charge of approving his leave request, only knew that plaintiff intended to take leave for chemotherapy treatment, not that plaintiff had Hepatitis C.  Wellington Depo., p. 52-53, 76.  Plaintiff admits that he did not know if Rockstroh had knowledge of plaintiff's illness at the time of his deposition some time later.  Id.  Moreover, plaintiff admits

13 - OPINION AND ORDER

that defendants Utecht and Fleenor did not even know about
plaintiff's illness until after his termination. Wellington Depo.,
p. 52-53.

Though plaintiff admits Utecht did not know of his illness
until after his termination, he argues that Utecht's deposition
testimony indicates that the County reassigned plaintiff to a
different office because he suffered from Hepatitis C. Plaintiff
alleges that Utecht testified "that she was concerned for
Wellington's health and that was the reason she did not think he
should be returned to the shelter." Pl.'s Resp. Memo., p. 20.
Plaintiff does not cite to the record to support this contention,
thus I assume he relies on the following portion of Utecht's
deposition:

> Q: Okay. And was it explained to him that the
> reason - it was for his own safety and his own
> well-being that his change was going to occur?
>
> A: Yes, I think so. I mean that - I'm
> remembering that.

Utecht Depo. p. 80, lines 21-24.

Though plaintiff maintains that Utecht's mention of "safety and
well-being" refers to his Hepatitis C, reading other portions of
her testimony contradicts plaintiff's contention. Utecht also
testified that plaintiff was assigned to a different location
because "there was a high level of concern about Mr. Wellington's
well-being given the threats that the animal rights folks had been
making about picketing him when he returned." Utecht Depo. p. 75,
lines 7-12. Utecht's testimony on the whole does not support an

14 - OPINION AND ORDER

inference that plaintiff was reassigned due to his Hepatitis C.

Although there is speculation as to why, exactly, plaintiff's job responsibilities shifted following his return from leave, plaintiff fails to present any evidence indicating the job responsibilities shifted because of his Hepatitis C. In examining all evidence in a light most favorable to the plaintiff, I find he fails to present evidence that the County took adverse employment action against him because of his disability. Thus, plaintiff has not made a prima facie case of discrimination on the basis of disability in violation of the ADA. Therefore, the County's motion for summary judgment as to plaintiff's federal and state disability claims are granted.

## D. Family and Medical Leave Claims Against the County

Plaintiff alleges the County took adverse employment actions against him in violation of OFLA and FMLA protections against employer interference.

### i. OFLA

Plaintiff contends that the County violated the OFLA by failing to reinstate him to his job as the manager of the animal shelter upon his return from medical leave, and by later terminating him because of his leave. The County denies any violations of the OFLA and asserts the cause of plaintiff's termination was budget cuts.

Under the OFLA, "[i]t is an unlawful employment practice for a covered employer to . . . [r]etaliate or in any way discriminate against an individual . . . because the individual has inquired

15 - OPINION AND ORDER

about the provisions of [the OFLA], submitted a request for family leave, or involved any provision of the ]OFLA]." Or. Rev. Stat. § 659A.183(2).

To establish a prima facie case of retaliation under OFLA, plaintiff must show: 1) he availed himself of a protected right; 2) he was adversely affected by an employment decision; 3) a causal connection between the two actions. Price v. Multnomah Co., 132 F. Supp. 2d 1290, 1296 (D. Or. 2001). Plaintiff here has failed to establish a causal connection. His briefings do not tend to show that the County denied his reinstatement and later terminated him because of his use of protected medical leave.[1] Thus, summary judgment for the County is granted as to plaintiff's claim under the OFLA.

### ii. FMLA

Plaintiff also alleges he was denied reinstatement and subsequently terminated in part by his use of protected medical leave in violation of the FMLA. Again, the County denies interfering with plaintiff's rights under the FMLA. The FMLA creates two interrelated, substantive rights: the employee has the right to use a certain amount of leave for protected reasons and the employee has the right to return to his job, or an equivalent job, after using this leave. 29 USC § 2615(a)(2), Bachelder v. Am.

---

[1] There is a dispute as to whether plaintiff was reinstated to his same position, based upon the shift in job responsibilities following his leave. However, because plaintiff fails to establish a prima facie causal connection between any action taken by the County and his medical leave, I need not address this issue.

16 - OPINION AND ORDER

W. Airlines, Inc., 259 F. 3d 1122 (9th Cir. 2001).

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 USC § 2615(a)(1). The Ninth Circuit has stated that an employer interferes with an employee's exercise of rights under the FMLA by attaching negative consequences which "tend to chill," and therefore interfere with, the employee's willingness to exercise those rights. 29 USC § 2615(a)(1), Bachelder, 259 F.3d at 1124. Employers may not consider an employee's exercise of protected FMLA leave rights when taking adverse employment action. Id. To establish a claim for interference, plaintiff must show that: (1) his leave was protected and that he exercised his rights under the FMLA; (2) the County later engaged in conduct that tended to chill the exercise of his FMLA rights; and (3) the County's conduct was motivated by the exercise of his FMLA rights. Id. at 1124-26. In order to survive summary judgment, plaintiff must demonstrate that his use of FMLA-protected leave was a negative factor in the County's decision to shift his job responsibilities and later terminate his employment. Gambini v. Total Renal Care, Inc., 486 F. 3d 1087, 1096 (9th Cir. 2007)

It is undisputed that plaintiff's leave was protected and that he exercised his rights under the FMLA. However, plaintiff fails to establish a prima facie case of interference because he has not presented evidence that any adverse employment action taken by the County was motivated by the exercise of his FMLA rights. There is

17 - OPINION AND ORDER

no evidence indicating that the County retaliated against or terminated plaintiff for taking medical leave.   In fact, there is evidence tending to show the County was cooperative and supportive of plaintiff's need to take leave.   Morever, plaintiff has not demonstrated that any adjustment of his job responsibilities following his return from leave was causally connected to his exercise of leave rights.

Construing the evidence in the light most favorable to the plaintiff, I am unconvinced that a reasonable juror could find that the County considered plaintiff's use of protected medical leave as a negative factor in its decision to shift his job responsibilities and later terminate his employment.   Thus, summary judgment for the County is granted on plaintiff's FMLA claim.

**E.   Unlawful Employment Practices Against Lane County**

Plaintiff alleges that defendants Rockstroh, Utecht, Fleenor and Howard aided and abetted in discriminating against him because of his disability, and in depriving him of his rights under the OFLA.   Plaintiff argues that the County is liable under Or. Rev. Stat. 659A.030(1)(g) for the acts of its agents.   The statute provides that it is an unlawful employment practice for an employer or employee "to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [ORS Chapter 659A] or to attempt do so."

Examining the facts in a light most favorable to plaintiff, he fails to present evidence that defendants Rockstroh, Utecht, Fleenor, and Howard aided and abetted in any discrimination,

18 - OPINION AND ORDER

interference or deprivation of rights related to his disability or his OFLA leave. Because I find that plaintiff fails to present evidence sufficient to survive summary judgment on his disability and OFLA claims, summary judgment is also granted for the County on this claim.

**F.  Deprivation of Liberty Interest, 42 U.S.C. § 1983**

Plaintiff contends that Fleenor, the County and Rockstroh deprived him of a protected liberty interest in his reputation. He alleges that the Due Process Clause of the Fourteenth Amendment gives him a liberty interest in his reputation, and that Rockstroh and Fleenor damaged his reputation by making statements in connection with his termination.  He seeks a name-clearing hearing and monetary damages.  Fleenor, the County and Rockstroh deny that any public statements were made in the course of his termination that would sufficiently damage plaintiff's reputation. Additionally, Fleenor and Rockstroh raise the affirmative defense of legislative and qualified immunity, respectively.[2]

Plaintiff alleges a protected liberty interest in his reputation based on the Fourteenth Amendment principle that a state may not deprive a person of his liberty interest "to engage in any of the common occupations in life" without due process of the law. Board of Regents v. Roth, 408 U.S. 564, 572-73 (1972).  To state a claim for denial of liberty interest, "a plaintiff must show that

---

[2]    Because I find that plaintiff fails to survive summary judgment on this claim on other grounds, I decline to address defendants' arguments of qualified and legislative immunity.

19 - OPINION AND ORDER

'(1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with termination of employment.'" Brady v. Gebbie, 859 F.2d 1543, 1552 (9th Cir. 1988), cert. denied, 489 U.S. 1100 (1989), quoting Matthews v. Harney County, Or., Sch. Dist. No. 4, 819 F.2d 889, 891-92 (9th Cir. 1987). Under these circumstances, the employee must be provided an "opportunity to refute the charge" at a hearing which provides the employee "with an opportunity to clear his name." Codd v. Velger, 429 U.S. 624, 627 (1977). This kind of hearing is referred to as a "name-clearing hearing." Brady, 859 F.2d at 1553.

A public employer may be held liable for a due process violation if the employer made a charge "that might seriously damage [the terminated employee's] standing and associations in his community" or "imposed...a stigma...that foreclosed his freedom to take advantage of other employment opportunities." Roth, 408 U.S. at 573. The stigma may result from charges impugning the employee's honesty or morality. Id. A charge that burdens the employee's future employment opportunities is also actionable. Id. Plaintiff has alleged violations of his liberty interest by defendant Fleenor, defendant Rockstroh and defendant County. I will address each in turn.

With respect to defendant Fleenor, I find plaintiff fails to submit evidence sufficient to demonstrate Commissioner Fleenor made charges to the public regarding plaintiff. First, plaintiff does not identify specifically which charges, if any, Fleenor made to

20 - OPINION AND ORDER

violate his liberty interest. Even if I assume, for the sake of argument, that a private e-mail sent to several County employees from Fleenor calling for plaintiff's removal nine months before his termination is the basis for this claim, this e-mail was never made public. Because plaintiff does not identify nor does a search of the record reveal any statements made by Fleenor regarding plaintiff prior to his termination or in the course of his termination, summary judgment is granted in favor of Fleenor.

For liability to attach to the County on this claim, plaintiff must demonstrate that the alleged violation was caused by a municipal policy or custom. Local government entities may be sued under section 1983 only where the alleged deprivation of constitutional rights resulted from the execution or implementation of an official government policy. Monell v. New York City Department of Social Services, 436 U.S. 658, 690 (1978). Plaintiff's claim against the County fails because he offers no evidence indicating the alleged violation of his rights under the Due Process Clause of the Fourteenth Amendment was caused by a County policy or custom. Thus, summary judgment is also granted for the County.

Plaintiff argues that Rockstroh made actionable public charges in connection with his termination, both during and after his leave. Specifically, plaintiff alleges that Rockstroh's statements damaged his standing in the community and irreparably impaired his ability to obtain gainful employment in his field.

Plaintiff points to two statements made by Rockstroh published

21 - OPINION AND ORDER

in the Eugene-Register guard. Rockstroh is quoted: "'He's requested leave to take care of himself,' Rockstroh said, although he wouldn't elaborate on Wellington's condition. . . Rockstroh said the recent criticism could be affecting the shelter's manager." Wellington Depo., Ex. 7.   In the second article relied on by plaintiff, published after his return from leave, Rockstroh states: "'The shelter's future is uncertain, with a strong community push to save more animals overshadowed by the threat of closure because of a possible cut in federal timber funding. Given the situation, it is unknown when Wellington will return to oversight of the shelter.'"   Wellington Depo., Ex. 12.   These charges, plaintiff contends, significantly burden his future employment opportunities.

That Rockstroh's statements were made public is undisputed. However, Rockstroh denies that the statements made to the paper were accurate and did not significantly impugn plaintiff's reputation, nor his ability to seek future employment.   Rockstroh also contests that the statements were made in connection with plaintiff's termination.

Rockstroh argues that the statements were not made in the course of plaintiff's termination.   There must be a temporal nexus between the employer's statements and the termination.   Campanelli v. Bockrath, 100 F.3d 1476, 1482 (9th Cir. 1996).   This requirement is satisfied when the defamatory statements are so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye.   Id.   The first statements by Rockstroh were published on February 5, 2008.   The second statement

22 - OPINION AND ORDER

was published on March 26, 2008. Plaintiff's termination letter is
dated May 23, 2008. Because I find that the statements were not of
the requisite nature to sufficiently stigmatize plaintiff, I need
not decide whether Rockstroh's statements were made in the course
of terminating plaintiff.

Plaintiff fails to demonstrate that the accuracy of
Rockstroh's comments to the Register-Guard were contested or
sufficiently stigmatized him. The question of whether Rockstroh's
statements rose to the level of stigmatizing him within the meaning
of Roth is a question of fact. Campanelli, 100 F.3d at 1480.
Reading the statements in a light most favorable to the plaintiff,
it is difficult to say that a reasonable jury would be able to find
that the comments impugned his reputation for morality or honesty,
or significantly burdened his chances for future employment.
Rockstroh's first statement was merely a charge of plaintiff's sick
leave and at the very most, the first article suggests that
plaintiff was suffering from job-related stress. Additionally, the
second article suggests at most that plaintiff would be unable to
return to his position due to a potential budget crisis—not because
he was a bad employee. Reading these statements by Rockstroh in a
light most favorable to plaintiff, the charges fail to rise to the
level of stigma required by Roth.

Further, plaintiff undermines his position in his deposition
testimony. There, he contends it is the lack of statements by the
County, Fleenor, and Rockstroh that significantly damaged his
reputation. Schmidt Decl., Wellington Depo., Ex. 7, p. 23.

23 - OPINION AND ORDER

Plaintiff states that he was the subject of harassment by animal activists and that "...there was no defense of any of that by my superiors, so if they don't defend it, in my eyes they must be promoting it." Id. Additionally, plaintiff adds that "there was . . . nothing in the newspaper that these allegations were false . . . the only thing I saw in the newspaper was Mike is sick, you know." Id. Plaintiff's testimony reflects his frustration with his employer's failure to defend him. However, his employer's failure to make statements on his behalf does not establish a violation of his liberty interest in his reputation.

For the reasons outlined above, I find that plaintiff fails to demonstrate evidence sufficient to indicate that Rockstroh violated his liberty interest in his reputation. Summary judgment is granted for defendants Fleenor, Rockstroh, and the County.

### IV. Conclusion

For the reasons set forth above, I find that plaintiff has failed to raise a genuine issue of material fact to survive summary judgment. Therefore, defendants' motion for summary judgment (doc. 45) is GRANTED on all claims and this case is dismissed. Further, all pending motions are denied as moot.

Dated this ___8___ day of December 2010.

_____
Ann Aiken
United States District Judge

24 - OPINION AND ORDER